IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| DENNIS SCHLACHTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CV-296 |
| | ) | |
| LIFE INSURANCE COMPANY | ) | |
| OF NORTH AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil action is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for the recovery of disability insurance benefits under a special accident insurance policy. Now before the court are the motion for judgment filed by defendant Life Insurance Company of North America ("LINA") [doc. 18] and the "motion to reverse" filed by plaintiff. [Doc. 20]. For the reasons stated herein, plaintiff's motion will be denied, defendant's motion will be granted, and judgment will be entered in favor of defendant. Because the court concludes that oral arguments are unnecessary, plaintiff's motion for oral arguments [doc. 29] will also be denied.

I.

*Background*

BWXT Y-12, LLC sponsors a special accident insurance policy which provides a "total and permanent disability benefit" for employees who meet the requirements

for eligibility. BWXT Y-12 serves as the plan administrator. [A.R. 35].[1] LINA is the claims administrator. [A.R. 45]. Plaintiff was formerly employed by BWXT Y-12 as a chemist and was covered by the accident policy.

The special accident policy provides that it "IS AN ACCIDENT POLICY WHICH DOES NOT PAY BENEFITS FOR LOSS FROM SICKNESS." [A.R. 1] (emphasis in original). Benefits under the policy are paid only for "loss from bodily injuries caused by *an accident* which happens while a Covered Person is covered by this policy . . . which, *directly and from no other causes*, result in a covered loss." [A.R. 1] (emphasis added). Losses must not be caused by "sickness, disease, or bodily infirmity[.]" [A.R. 1].

Similarly, the policy's disability benefit requires, inter alia, that the claimant be "injured by an accident covered by this policy[.]" [A.R. 3]. The summary plan description makes clear that the claimant must "become totally and permanently disabled *as a result of the accident*[.]" [A.R. 30] (emphasis added).

In August 2003, plaintiff submitted a claim for disability benefits based on "incapacitating chronic back and hip pain due to injury removing horse from swimming pool." [A.R. 711].[2] On October 6, 2003, LINA issued a letter denying benefits. [A.R. 646].

---

[1] References to "A.R." indicate a page or pages of the administrative record.

[2] Plaintiff has been diagnosed with complex regional pain syndrome ("CRPS") and reflex sympathetic dystrophy ("RSD"). [A.R. 108, 118, 122, 188, 300]. A September 3, 2003 letter from pain consultant Stephen Lucas explains that CRPS "is a generally used term now to cover both syndromes previously known as reflex sympathetic dystrophy and causalgia." [A.R. 188]. The court will accordingly employ the terms CRPS and RSD interchangeably. Further, at plaintiff's request,
(continued...)

Following a review of the available medical record and the pertinent policy provisions, LINA specified two reasons for the denial: (1) plaintiff did not become totally disabled within 365 days of the alleged accident as required by the policy; and (2) his pain and disability "are not the direct result of an accident, independent of all other causes." [A.R. 647-48].

By letter dated December 2, 2003, plaintiff through counsel requested reconsideration of the denial of benefits. [A.R. 595, 617, 624]. LINA again denied plaintiff's claim, citing the same reasons for denial. [A.R. 367-72].

Plaintiff then filed a second administrative appeal in February 2005. [A.R. 89]. By letter dated May 25, 2005, LINA again notified plaintiff that it would uphold its original decision. [A.R. 54]. The letter included a summary of the pertinent medical records and policy terms, along with citation to an Independent Medical Records Review conducted by Dr. Robert Smith. LINA again concluded that plaintiff was not permanently totally disabled within 365 days of the horse incident, and that the medical record does not support the conclusion "that Mr. Schlachter's impairments are *directly and from no other causes*"

---

[2](...continued)
the court takes judicial notice of the website of the National Institutes of Health / National Institute of Neurological Disorders and Stroke. *See* Fed. R. Evid. 201; *Evans v. Metro. Life Ins. Co.*, Nos. 05-5791, 05-6327, 2006 WL 1827704, at *6 n.7 (6th Cir. June 29, 2006). Therein, CRPS is described as a chronic pain condition of uncertain origin, sometimes triggered by tissue or nerve injury, which "[i]n all likelihood . . . does not have a single cause, but is rather the result of multiple causes that produce similar symptoms." *See* http://www.ninds.nih.gov/disorders/reflex_sympathetic_dystrophy/detail_reflex_sympathetic_dystrophy.htm (last visited Dec. 27, 2006).

produced by the horse incident. [A.R. 59] (emphasis in original). The present appeal followed.

II.

*Analysis*

The parties dispute whether plaintiff became totally and permanently disabled, as defined by the accident policy, within 365 days of the horse incident. Based on conflicting interpretations of the amount of discretionary authority granted to LINA under the instant plan, the parties also disagree as to the standard of review to be applied by this reviewing court. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989) (Review is *de novo* absent a grant of "discretionary authority to determine eligibility for benefits or to construe the terms of the plan."); *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994) (The highly deferential arbitrary and capricious standard of review should only be employed when there has been "a *clear* grant of discretion") (emphasis in original).

The court need not reach these issues. Even under a *de novo* review, the administrative record indicates that plaintiff's alleged disability was not, as required by the special accident policy, "caused by an accident which happens while a Covered Person is covered by this policy . . . which, directly and from no other causes [including bodily infirmity], result[s] in a covered loss." LINA's decision to deny accident disability benefits on that basis must accordingly be affirmed.

Plaintiff applied for disability benefits under the special accident policy in August 2003. [A.R. 711]. By letter dated September 8, 2003, LINA wrote to plaintiff requesting "[a] complete description of the accident which you feel caused your disability." [A.R. 709]. In response, plaintiff submitted a September 17, 2003 letter detailing "the accident that caused my disability." [A.R. 683]. Plaintiff described an *October* 23, *2001* incident in which he fell while extracting one of his horses from his swimming pool. [A.R. 683-84]. In the September 2003 letter, plaintiff specified that, following the horse incident, "*I knew I had hurt my back badly*, but I went to work in terrible pain. I believed that the pain would work itself out with time." [A.R. 684] (emphasis added).

At times, plaintiff's communications to his physicians have been consistent in relating his disability to the approximate time of the horse incident. In March 2002, plaintiff referenced to neurologist Jack Scariano "an injury several months ago." [A.R. 173]. To Dr. Michael Dykes in May 2002, plaintiff complained "of low back, bilateral lower extremity pain for the past 7 months." [A.R. 116]. On December 12, 2002, plaintiff told Dr. Leland Hughes that he had suffered "very bad back pain" for one year. [A.R. 680]. Consistent with these reports, treating pain consultant Dr. Stephen Lucas wrote in December 2003 that

> I believe that your disability is directly related to the [horse] accident and the information that I have seen suggest [sic] that the prior back problems was [sic] minor in comparison to the CRPS symptoms, which are related to your [horse] accident. In my opinion you have complex regional pain syndrome due to the accident with the horse on October 23, 2001[,] and that is the reason for your disability.

5

[A.R. 202].

However, many other statements are found in the medical record indicating that the horse incident merely aggravated a preexisting infirmity. On October 15, 2001, (predating the horse incident), plaintiff told Dr. Hughes that he had "hurt his lower back" and was "very uncomfortable." [A.R. 675]. On October 26, 2001, Dr. Hughes noted that plaintiff's back pain had "*worsened due to activity . . . was better* - until his horse got stuck in his pool." [A.R. 676] (emphasis added). On November 1, 2001, Fort Sanders Therapy Center ("FSTC") described plaintiff as suffering from "a history of back pain for the last two weeks *with etiology unknown*." [A.R. 670] (emphasis added).[3] In January 2002, Dr. Edward Kahn noted that

> *approximately four months ago for no obvious reason* he developed pain in his back. . . . *He did not have a specific injury that brought this on*. However, approximately a month after having developed the back pain, a horse fell into his swimming pool and in the process of trying to get the horse out, his back pain increased dramatically. . . . Of note, patient developed severe RSD involving his left arm after an elbow dislocation. . . . He is not receiving any treatment for that and he has been suffering with it for approximately 10 to 15 years.
>
> . . .
>
> Mr. Schlachter may very well be exhibiting symptomatology of RSD involving his back. *Causation of this is unknown* although he did have some abdominal surgery in 2001 which may have been the inciting incident.

[A.R. 659-60] (emphasis added).

---

[3] "The patient states that two weeks ago he started having trouble with his low back. He states the only thing he could think of at that time is that his back was bothering him, but then a horse fell in his pool. As he was trying to help the horse get out of the pool, he slipped." [A.R. 670].

6

Other statements in the medical record more strongly disprove the allegedly precipitating character of the horse incident. The notes of his January 2002 evaluation at FSTC contain plaintiff's report that his pain began in August - not October - 2001, with "[e]tiology unknown." [A.R. 352]. At his initial evaluation by pain consultant Dr. Maurice Charitat on July 25, 2002, Dr. Charitat noted that "[t]his patient tells me *approximately 1 year ago* he started to develop some low back pain. *He cannot attribute it to any specific event*." [A.R. 213] (emphasis added).[4] On February 25, 2003, plaintiff told Dr. Alex Alexander that his "chronic back pain [and] complex regional pain syndrome . . . date[d] back approximately 20 months." [Tr. 642].[5] According to the January 28, 2003 neurological evaluation by Dr. Kendrick Henderson, "[a]pproximately 6 months ago he developed the gradual onset of back pain." [A.R. 111].[6] To Dr. Denise Tope on April 29, 2003, plaintiff related that his back pain began nine months prior. [A.R.160].[7] To the staff

---

[4] The period referenced by Dr. Charitat would predate the horse incident *by approximately three months*. Additionally, Dr. Charitat noted plaintiff's "extremely complex past medical history in regards to his pain problems." [A.R. 215].

[5] This predates the horse incident *by four months*.

[6] This *postdates* the horse incident *by approximately nine months*. Dr. Henderson also noted a history of CRPS dating back to 1991. [A.R. 111]. Dr. Henderson concluded that plaintiff has "a complex history remarkable for complex regional pain syndrome in his left upper extremity and perhaps *a similar problem* involving his lumbar region." [A.R. 113] (emphasis added).

[7] The period referenced by Dr. Tope would, again, postdate the horse incident *by approximately nine months*. Plaintiff also told Dr. Tope that he received a medical discharge from the Navy in 1993 *due to RSD*. [A.R. 160]. The February 2004 narrative of Dr. Gary Walters also notes "a history of severe RSD when he was in the military, he was *hospitalized and treated extensively* during his military career for RSD." [A.R. 166] (emphasis added).

7

of Dr. Lucas in August 2003, plaintiff wondered whether his problems were "related to his regional CRPS problem that he developed in the military, and for which he was discharged from the military on a medical discharge." [A.R. 190]. Two months before, Dr. Lucas's staff noted plaintiff's "very complicated history and problem" of "unclear etiology," adding that "Mr. Schlachter reports that when he was in the Armed Service he was diagnosed with RSD and received extensive treatment and did recover." [A.R. 195, 197].

On the basis of this extraordinarily contradictory medical record, Dr. Smith's Independent Medical Records Review concluded that plaintiff's alleged disability "would be unrelated to the incident in October 2001." [A.R. 70]. The undersigned must agree.

The court recognizes that plaintiff obtained a statement from treating pain consultant Dr. Lucas that "you have complex regional pain syndrome due to the accident with the horse on October 23, 2001[,] and that is the reason for your disability." However, Dr. Lucas is the successor physician (as of June 2003) to Dr. Charitat at Pain Consultants of East Tennessee. [A.R. 189]. As such, Dr. Lucas did not personally examine plaintiff until nearly two years after the horse incident.

Dr. Charitat's initial examination, in July 2002, was one year closer in time to the alleged precipitating accident. At that evaluation, as noted, plaintiff: made no mention of the horse incident; claimed that his back pain began three months prior to the horse incident; could not "attribute it to any specific event"; and mentioned "*a few instances* where he did strain his lower back." [A.R. 213] (emphasis added). Dr. Charitat opined that

8

plaintiff's condition "could be [a] crossover" between the conditions of fibromyalgia and his "*history of* complex regional pain syndrome." [A.R. 215] (emphasis added). Further, Dr. Lucas himself acknowledged that plaintiff has "a very complex and unusual presentation." [A.R. 237]. In light of the myriad contradictions in the present medical record, the court simply cannot credit Dr. Lucas's remote attempt to connect plaintiff's condition to the horse incident.[8]

As noted, CRPS is a condition that "[i]n all likelihood . . . does not have a single cause[.]" According to treating physician Walters, "[i]t is a syndrome with severe, chronic pain that follows *an injury or illness*." [A.R. 300] (emphasis added). In light of the present administrative record as outlined above, plaintiff's attempt to identify the horse accident as the precipitating cause of his condition simply fails. The origin of his condition is unclear, and his history of back pain and CRPS predates the special accident insurance policy - irrespective of whether the pain syndrome has always manifested itself in the same part of his body.

---

[8] As LINA's second and third denial letters correctly state,

> [a]lthough Dr. Lucas does commit to supporting the notion that the claimed accident is the direct cause of his current disability, the balance of the records do not support this conclusion. The records do support that Mr. Schlachter had a history of RSD and back pain which may or may not have been exacerbated by the incident on October 23, 2001. The statement that Mr. Schlachter's impairments are *directly and from no other causes*, [sic] from that incident is not supported by the records on file.

[A.R. 59, 371] (emphasis in originals).

9

III.

*Conclusion*

Even if a *de novo* review were applied to the record in this case, the court concludes that the denial of plaintiff's accident disability claim should be upheld. The medical record amply supports the conclusion that plaintiff did not become totally and permanently disabled as the result of an accident covered by the policy, "directly and from no other causes" including bodily infirmity. An order consistent with this opinion will be entered.[9]

ENTER:

                                                  s/ Leon Jordan
                                       United States District Judge

---

[9] As an aside, the court observes that one entry in Dr. Lucas's file indicates that plaintiff's preexisting infirmity was worsened by a *motor vehicle accident* in September *2001*. [A.R. 226]. The majority of references to this incident, however, indicate that it actually happened in September *2003*, long after the alleged onset of disability. [A.R. 123, 184, 232, 254]. Plaintiff does not argue that the car accident would trigger disability coverage under the policy, and the court further presumes that Dr. Lucas's "2001" notation is a typographical error.